cases number 23-10062, Katrina Martin et al. v. United States and Lawrence Aguero. Mr. is it Hicomo or Giacomo? It's Giacomo, your honor. Neither one. Okay. Mr. Giacomo, welcome. Whenever you're ready. Thank you. Good morning and may it please the court. Patrick Giacomo of the Institute for Justice on behalf of the plaintiffs. In 2017, an FBI SWAT team raided the wrong house, traumatizing the innocent family and died. After a panel of this court dismissed plaintiff's FTCA claims, the Supreme Court revived them all and then remanded to this court to carefully reexamine this case in the first instance. Guiding the analysis on remand, the court also observed that Georgia law would permit a homeowner to sue a private person for damages if that person intentionally or negligently raided his house and assaulted him. It then asked this court to consider two things. First, whether the discretionary function exception bars either plaintiff's negligence or intentional tort claims. And second, if so, whether a private individual under like circumstances would be entitled to claim a defense from section 2674, which covers judicial immunity, legislative immunity, or any other defenses to which the United States is entitled. The answer to both questions is no. First, the discretionary function exception is no bar to these claims for the simple fact that the actions here were neither discretionary nor a function. The actions were not discretionary because the SWAT team was purportedly following the order of a court in executing a warrant for one house, but instead they mistakenly went to another. There's no room for discretion in deciding where to execute the warrant. And second, this was not a function because raiding the wrong house is not a permissible exercise of policy judgment. It's not an exercise of policy judgment in any way, nor is it grounded in policy at all. In fact, as the government said to the U.S. Supreme Court, it's the policy of the United States to raid the correct house. So even if that were a policy, it was violated here. But you don't ask whether the, well, I have so many things to say about this case, but because it's hard, because it's very hard. Yes. So let me start at first principles. Please. You've asked us to basically re-examine a lot of our discretionary function jurisprudence in light of what the Supreme Court said in this very case just a year ago. Well, Your Honor, I would say the Supreme Court has directed this court, and I'm asking the court to— I know, but the Supreme Court is not the Eleventh Circuit. Correct. And the Supreme Court has the freedom to re-examine its precedents— Yes. —whenever it deems it appropriate to do so. We are a humble three-judge panel, and we do not have the authority to—I mean, in certain circumstances, we can find, as you say, with a couple of cases that have been abrogated. Yes. But we don't have the general authority to just disregard prior Eleventh Circuit precedent that we think is wrong. Correct. And I've done the research and counted personally. We have over 60 published cases since 1999 on the discretionary function exception, and they're all over the place. Some of them read it narrowly. Some of them read them broadly. Some of them have great language for you. Some of them have great language for the government. Some you can harmonize. Some you can't harmonize. These are all my views. I'm not speaking for my colleagues. So, it's really hard to do first principles when we are trying to make our way through a landscape that's just dotted with decisions. Believe me, Your Honor, no one's more sympathetic to this confused landscape than I am. As someone who practices outside of the Eleventh Circuit as well, I can tell you that that's not an outlier position. Every circuit has been all over the place on what this exception means because the Supreme Court hasn't really guided the analysis since the Gaubert decision in 1991. But as to this case, I would say two things. First is that it very well may be that to, in a fulsome way, address the questions that the Supreme Court identified, this Court will need to go en banc. But second, I would be happy to talk with the Court through some of the potential obstacles of circuit precedent here. And so, I'd like to begin doing that by pointing out that, as the Supreme Court identified, there are issues on three separate matters that could implicate circuit splits or previous circuit precedent here. So first is whether the discretionary function exception applies to careless mistakes, which this case obviously indicates there's been carelessness. Here we have the FBI basically claiming they fat-fingered the GPS, they showed up at the house, they didn't look at the street sign, they didn't look at the house number, and they went in anyhow. This circuit has not weighed in on the carelessness split, which is drastically in favor, which is equally divided between three and three on whether the discretionary function exception covers careless acts. It should not, because the language of the exception itself says that the act has to be based on a discretionary function. The second issue, though, and I think that the next best route for this Court would be But you don't, well, so this is a sort of foundational question, I'll ask the government the same thing if I remember. You look at the function, but not whether the function was carried out appropriately or negligently, right? To figure out whether the discretionary function exception applies. Well, Your Honor, I mean, if you have the highest level policymaking decision, one that you really can't contest is at the highest levels of government decisionmaking, right? The government is faced with, you know, a forest fire that is going to engulf two communities but only has the resources to save one. They decide, we're going to try to save this community because there are more people there and get the other people out of the second, but the houses in the second are just going to be lost. We don't have enough resources or manpower to do that. That's correct. Right. But you don't look to see whether or not that decision was implemented at that level, negligently or not, right? That's correct. And if I might, Your Honor, that's actually a great hypothetical because we have a case from the U.S. Supreme Court essentially evolving that. And the case is called Rainier, it's from the 1950s. And there, there were lawsuits against forest management officers who had taken on the act of fighting a fire and then did it negligently. And there, the Supreme Court said the discretionary function exception would not apply. And the distinction that the court has consistently drawn from Dallaheit through Indian Towing through Rainier all the way up to Gawbert. Did Rainier actually address the discretionary function exception? Yes, it did, Your Honor. You're sure about that? I mean, they have the language you just said, but I'm not sure that it addressed the exception. Go ahead. Okay, so in Indian Towing then, which also addressed the discretionary function exception, we have a situation where the court is explaining the Coast Guard can decide whether, based on policies for maritime management or other things, it wants to keep up certain lighthouses. But once it does decide to keep up a lighthouse, it has an obligation to do that non-negligently. And so the government couldn't get off the hook in that case. It couldn't get off the hook in Rainier. And this is the same sort of logic that would apply to a situation that would come down through the hypothetical, Your Honor, identified. I don't think Rainier addressed the exception. Well, I may be mistaken. I think it had the language you said, which suggested the way it would, but I don't think the exception was asserted by the government in that case. Okay, well, then I apologize if I'm mistaken about that, Your Honor. But Indian Towing is another great analogous case. It's the same sort of situation you described, except instead of fighting a fire, we're deciding whether to administer lighthouse upkeep. Or the Eastern Airlines case, which is, you know, the Supreme Court's essentially just affirming a D.C. court decision with the same thing there, where they're saying the FAA, its policymaking on how to do air traffic control, that's something that cannot be of the discretionary function exception. But the decisions of air traffic controllers and whether they're negligent is something you can bring a claim for. So this is not, we're not trotting any new ground here. This distinction is discussed in Dalaheid as well, where the court is saying, here are all the negligence claims, or essentially claims that are meant to attack the policy of how this fertilizer would be created and then shipped to Europe. And what the court says there is, there's no allegation here that there was an individual act of negligence. For instance, something like a dock worker throwing a cigarette into the hold of one of these ships that exploded and killed 600 people. And so I think that's the way that the court should address these things, because again, the sort of lodestar for all of this, from Dalaheid on, has been the purpose of this exception is to prevent the use of tort claims as a way to collaterally attack policymaking. And so that can be a difficult question in certain areas. It's not a difficult question in this case. In fact, if we were in the case like Rainier or in Indian Towing, I would give you a hypothetical and say, for instance, if a SWAT team raided the wrong house because it failed to check the address, that would be an easy case that we would know this is not a discretionary function. And so now it's strange to find ourselves having this important conversation in a case where the application should be very clear. Because here, there was no overarching policy. That was the government's position the entire way up on the appeal. It got to the Supreme Court and then said the policy was to raid the right house, which of course was violated. And now we're back here and the government is scrambling. So it points to a single PowerPoint slide that effectively told the officers, do a good job when you execute these warrants. And that's not policy for purpose of the discretionary function exception. But even if it were, this SWAT team failed in satisfying that policy. It went against that directive. And so there's just, this is an interesting case because it's probably one of the very few that can fail on the first step of Gaubert. What do you do with the language in some Supreme Court decisions and some of our decisions which say that the exception applies also at an operational level? Yeah, so I think what Gaubert said was, that was a formally dispositive distinction, of course, in Dalleheit, or at least it had been interpreted that way. And they said that's no longer going to be dispositive. And what I would do with that is look at what Justice Scalia says in his concurrence in that case, which is to say, sure, that's not dispositive, but it's got to be relevant to our analysis because we're looking at the kind of conduct that, and deciding whether that is something that would be grounded in policy. So it may be that there are these uniquely Byzantine and overarching regulatory schemes like in Gaubert, where you have federal savings and loan that's very highly regulated, and you have a regulation that specifically says this person is basically acting as a conduit of policy from the highest levels of the agency. But that doesn't mean that every operational act, certainly not the ones in this case, should be given that treatment. And we know that because Gaubert itself said this, of course, wouldn't apply to things like driving. Even if it was a banking regulator driving to the bank, that's not a discretionary function. And that's, as Justice Sotomayor points out in her concurrence, a huge problem for the application of this doctrine to this case. I'd also... What about the Mesa case? Thank you, Your Honor. I was just about to raise the Mesa case. Okay. So I have several things to say about Mesa. One, I think it's distinguishable because it's an arrest warrant, not a search warrant, and they arrested someone with the same name. But I think more importantly... But this case had both warrants. It did. It did, but they didn't arrest anyone with the right name in my client's house. But I think the more important reasoning for why Mesa is abrogated as to this point is that it was predicated on the premise that executing a warrant is discretionary. In fact, the district court there said the plaintiff's claim that executing a warrant is ministerial, that's plainly wrong. But in Utah v. Strieff, the United States Supreme Court very clearly said that executing a warrant is, in fact, a ministerial task. And so Mesa has been abrogated. This is... Even under the very strict rules of binding circuit precedent, this is a situation where the premise of that point has been completely eviscerated after the Strieff decision because now we know that this is, in fact, a ministerial task. I'll just say on the point of shivers, I think that's an issue that would have to go en banc. That's a two-to-one decision where both my friend and I agree that at least the holding that no constitutional exception applies is wrong. And so I would urge the court to consider that, but I would like to reserve the remainder of my time. All right. Thank you very much. Thank you. Mr. Ross. Good morning, and may it please the court. Aaron Ross on behalf of the United States and FBI Special Agent Lawrence Guerra. The district court correctly held that the discretionary function exception covered each of plaintiff's FTCA claims. That holding reflects a straightforward application of the Supreme Court's Galbert decision and this court's precedent. All right. Let's talk about how to define the exception at various levels. Do you agree that there are some, we'll use operational for now, that there are some operational decisions on the ground that are not covered by the discretionary function exception? Yes, Your Honor. We would have to apply the Galbert two-part test to determine whether it's, whether the conduct in question is satisfactory. Okay. Give me an example of one operational decision on the ground involving choice by a government employee that's not covered by the discretionary function exception in your view. So your premise is the first prong's been satisfied and we're now looking to the second prong. Is that correct? The first prong asks whether there's an element of judgment or choice. That may not be.  Yes. There's a judgment. Yes. There's a judgment. There's an element of choice in almost everything that human beings do. Human beings are seldom automatons. You could have a law enforcement action that does violate a policy where a policy specifically mandates a specific course of action. So you could fail the discretionary function exception test at policy level prong one. You could also on an operational action. Yes. I agree. I agree with you. So yes. Level one, prong one is satisfied. So tell me what exercise of choice operationally by a government employee would not be covered by the exception. Give me an example. Right. I came across a case where DEA agents were doing a narcotics bust. I think this case was called Patel out of California. And after they ran out of non-flammable ammunition, they used flammable projectiles, which ended up burning down the house and the suspect inside. And what the court said is this is not susceptible to policy analysis because the point of the DEA is to recover drugs, make arrests, not to burn down the entire house and the evidence inside. And so that was a situation where it satisfied prong one, but didn't satisfy prong two. How's that different than here? In here, we have many discretion decisions that are susceptible to policy analysis. And we know that from what is policy based about going to the wrong house. Well, we look at the decisions that the agents are making in conduct of identifying, locating the proper house and what Agent Garrett testified here. That's not policy based. It's grounded in policy considerations. No, it's not. You're supposed to, you can only execute a warrant, search warrant or arrest warrant at the place described in the warrant. There's no level of discretion involved there. A police officer who has a search warrant for house A can't decide he's going to execute it on house C. Under MESA, the relevant conduct is the decisions as to how to locate the target of a warrant. And the warrant itself doesn't specify, mandate specific courts of action on how to locate the target of a warrant. It just identifies an address. And so under Galbert, it satisfies prong one because there are numerous decisions an agent has to make in identifying and locating the target of a warrant. All right. Let me give you a crazy hypothetical, okay? Not this case. Police officers, FBI agents have a warrant, search or arrest or both for house A in neighborhood one. They're pressed for time. So they say, let's go into the very first house we see in the neighborhood. Maybe we'll get lucky and arrest the suspect there. It'll save us some time. Is that covered by the exception? I mean, they're not attempting to execute a warrant in the sense that they're trying to locate a house. They're just going into a house that they see. But to execute the arrest warrant? I don't think that would be covered because just making no effort to identify the proper house and just picking houses. The line can't be making no effort and making a negligent effort. That can't be the dividing line. I think the question is whether they're performing their law enforcement function. They are performing a law enforcement function. They're just doing it very badly. Well, I understand your point, your honor. Tell me how that case is different than this one from a policymaking perspective. It involves choice. It involves identifying the place to go to, the reason you're going to go there, and you make a colossal mistake and go into the wrong place. What's the difference between my hypothetical and this case? I think in your hypothetical, it may be that under prong two, they're not undertaking making decisions as to how to locate and identify the target of a warrant that would be grounded policy considerations. They may be. If you have a situation where it's extremely dangerous like this one, where you know that the suspect is violent, surveillance conscious, Agent Garrett testified to having wiretap recordings showing that these people were looking out the windows and watching drive-bys. So Agent Garrett has to make decisions going in the darkness, dimming his lights, not spending a lot of time driving by. You could have those considerations. I don't think the DFE is categorically inapplicable to the situation that you described. I would just need to know more facts to know whether it did apply to that situation. I just don't see that you've provided a workable line in your brief, because everyone agrees that at some operational level, decisions on the ground, though they involve choice, are not covered by the exception. And I don't know what that workable line is. Well, I think we can look at the record here and Mesa, because what Mesa is talking about are the decisions weighing the urgency of the apprehension versus protecting public safety, preserving evidence. In this case, we know from the SWAT addendum that FBI was trying to achieve simultaneous execution of multiple warrants across the city to ensure surprise and to protect the agents and the public safety. So there are actual considerations in this case that are grounded in policy, and that's serving the FBI's mission of enforcing the law, stopping gang activity. But that may go to how you execute the warrant, not where you execute the warrant. So for example, if the agents here decided that the suspect was extremely dangerous, and they had to proceed by driving to a location where they were going to meet under cover of darkness without any lights in the car to avoid detection, and they crashed into somebody on the way there, I can see how that could be a decision grounded in policy determinations. But that's about how you execute a warrant, not where you execute a warrant. As to the where, there's no discretion. You can't go anywhere else except the place identified in the warrant. Well, my response to that, Your Honor, is that's not what the discretionary functioning exception is looking at. The challenge conduct is the conduct in a general sense, or the nature of the conduct. And what Mesa says is the nature of the conduct in this situation are the decisions as to how to locate and identify the suspect. If the FBI had a written policy with a checklist of things that the agents had to do to verify the place identified in the warrant, and the agents deviated from it, would this come under the exception? No, it would fail under prong one. If there's a policy that mandates a specific course of action for the employees to follow and they don't follow it, then prong one is not satisfied. And the FBI had no policy in place in this time as to how agents were supposed to identify the right place? No, Your Honor, they did not. That's a remarkable statement. Well, it affords agents discretion because each situation is different and it's case by case. No, no, but that's not how to execute the warrant. It's about making sure you're going into the right place. You're telling me that the Bureau, with all of its experience, has no policy on what checklist agents are supposed to go over to make sure that they're going into the right place? No. There's no policy whatsoever? Agents are just on their own? There's no policy that defines how an agent should locate and identify the target of a warrant. And that's what the record shows. And in this case, Agent Guerra undertook numerous precautionary efforts, as the district court found and as the prior panel found, including reviewing the operational order in the SWAT addendum, conducting a drive-by, conducting a site survey. But all of those things meant nothing once he used a personal GPS device that he later threw away. Well, they did because it explains the context of the mistake. Because when he's using the GPS... What did he say he did with the GPS, by the way? Because the GPS, if you put in the address, at least my experience with a GPS device, will tell you how to get to that address. What did he do with the GPS that led him to the wrong place? He put in the address, it alerts that he arrives, he looks up, he sees the house with all the markers that he identified before on his site survey. But the GPS took him to the wrong place? It alerted him when he was in front of the wrong place. Wait, wait, wait. He puts the correct address in the GPS device? Yes. And the GPS device tells him what? According to him? You've arrived at your destination. Which is the right place or the wrong place? Where he was, was in front of plaintiff's home, not the target home. He looks up... So the GPS device, according to him, malfunctioned by a block? 300 feet. A block? Three to four houses, your honor.  We're on the same street. Different... No. A street separated by a cross street. You've got a block, a cross street, a block, and they're on opposite sides. You're minimizing the distance and the spatial reality of the warrant. Right. The houses are where they're located. The GPS identifies that you've arrived at your destination. He's done all this prior preparation. He looks up. It's 3.30 in the morning. He sees all the markers that are unique to the target home at plaintiff's home. Even though he's gone to the home, to the right home before, to do a drive-by and check it out, and he now, he's on the other side of the street on a different block. That's correct, your honor. There's a turn. Both houses have a left turn in front. He thought he had... It was the same thing? Every house has a left turn in front, depending on from where you're approaching. As the road curves. I would add that another, the case agent involved in the case, TFO Thompson, he did two hours of surveillance from 200 yards away two weeks before. He didn't realize it was not the right house until after they discovered their mistake. These homes... That doesn't seem policy-based to me. I know we have a lot of cases to wade through, but I just don't see how you imbue that decision making about identifying the house with any sort of policy determination. He doesn't have the benefit of taking as much time as he wants to go to the mailbox on the other street to see the number from the front of the house, which is on Glendale Lane. You can't see the mailbox. It's 5 a.m. They're doing simultaneous execution warrants. He is considering the safety of the agents involved, the potential that the suspect in the house will see them, alert other... They literally not have to walk by the mailbox to get into the house? No. The mailbox, the front door of the house faces Glendale Lane. The mailbox is at the end of the driveway on a separate street. And as the district court found and as Plains Council conceded at the oral argument, going from the front of the house where they're executing the warrant to the mailbox would have taken time and exposed the officers to threats to their safety. It wasn't... It was reasonable for Agent Guerra and the other agents not to undertake that risk in light of all the other considerations that were being made. And that was the district court's finding. The prior panel agreed with the district court's factual findings. Those were not submitted to the Supreme Court. Supreme Court did not review, take up the issue of whether discretionary function exception applied in this case. It did not disturb the district court's prior factual findings. We asked that the court... That's not a factual finding. Well, the factual findings as to all the precautionary measures that... You mean the historical underlying facts. That's correct. I get it. I get it. And so I would look at the factual findings rather than the Supreme Court's characterization of the facts in this case. Can I ask you a question about the last step in the process just in case we get to it?  And that is the FTCA, assuming the exception doesn't apply, requires a court to determine whether or not a private individual would be held liable under like circumstances under the governing state law. You cite a number of state statutes and state decisions which provide a certain type of immunity for law enforcement officers. Why are those authorities relevant if the FTCA asks you to look at whether a private individual would be held liable? Yes, Your Honor. To be clear, we're not arguing state immunities. We're not saying state law immunities like Georgia's official immunity doctrine would apply. We're saying that the United States would get the benefit of law enforcement privileges, which are different than immunities. And that would be a situation like an officer is allowed to use reasonable force to defend himself. And this court, on multiple occasions, we cited the Wimberley case, the Gomez case, and also the Dalrymple case back in 2006. Those are cases in where this court recognized that the private person standard in a law enforcement context requires looking at whether, under color of state law, the conduct was privileged. Otherwise... What's the difference between privilege and immunity? An immunity is a complete defense to liability. Privilege is just a defense that you can raise as a local officer could raise, not to bar the claim completely, but to say that my use of force in this situation was justified for this reason, the same as it would be in another case. Because otherwise, you end up in this absurd situation where a federal law enforcement agent could be making a lawful arrest, but because a private citizen can't do that same conduct, now they're liable, the U.S. is liable under the FTCA. That doesn't make sense, and that's what these other circuits have also recognized. Well you only get there if the arrest is unlawful. Well no... If the arrest is lawful, you don't have FTCA liability. Well, under the FTCA, if you took the private person standard literally to not include law enforcement privilege, you could have a lawful arrest. So let's say the agents went to the correct home, handcuffed the plaintiff. You wouldn't think someone would file suit, but a plaintiff could say, a private person can't come into my house and handcuff me, therefore the United States should be liable under the FTCA. We're not saying that the United States is immune because this is a uniquely government function. That's what Indian Towing says you can't say. We're saying you just need to apply law enforcement privileges so the United States can't be liable in situations where a private person would never be involved. And so the defense is... Does that privilege under state law, in your view, have a good faith element or requirement? So for the false imprisonment claim, there is a good faith defense, and what Georgia law provides is that a law enforcement officer executing a warrant in good faith is not liable for false imprisonment. For the assault and battery claims, the defense is that an officer is entitled to use reasonable force to defend itself or secure his premises. Georgia law is clear that a law enforcement officer can handcuff a suspect and send it to an arrest. And then I would add that the plaintiffs haven't challenged the merits of their non-intentional tort FTCA claims. And so we would ask that the court affirm summary judgment both on the alternative holding that plaintiff's claims fail under state law. And then last, we'd ask the court to affirm summary judgment to Agent Guerra on qualified immunity. All right. If the court has no further questions, we ask that... I thought that before you sit down, we still have the initial briefs on the merits here because the Supreme Court vacated the prior panel's decision, which means that decision is no more. That's correct. I thought, I don't want you to get into the merits of it, but I thought that in their initial brief to this court, to the initial panel, the plaintiffs also challenged their remaining tort, non-intentional tort claims. I thought they challenged everything on different grounds. On the discretionary function exception and the supremacy clause analysis, not on the actual elements of the claims, if discretionary function exception didn't apply, for instance. Okay, I'll have to go back and look at the briefs. I thought that everything had been challenged in the first appeal. Well, I think it said, it may have said for the reason that district court found, but the district court didn't address the merits of the non-intentional tort claims because they relied on the discretionary function exception. And then for the intentional tort claims, the district court refused to apply the law enforcement privileges that we're advocating for. Okay. All right. Thank you very much. Thank you. All right, so let's talk about the last piece of the puzzle if we get there. Yes. How do you apply the private person, private individual language of the FTCA with regards to a law enforcement individual who can do some things that a private person can't do when authorized? Sure. And let me begin, Your Honor, by admitting my mistake. You're correct that Rainier was a unique government function case, not a discretionary function case. So I was wrong about that and I apologize. The answer to that question is, as Your Honor suggested, actions are still legal or illegal regardless of whether you're an FBI agent or a private person. And the FTCA is flexible because it's incorporating tort law principles. So in the same way that you'd be able to apply to situations where a security guard stops someone leaving a store and analogize that to law enforcement or even a case where, similar to this case, you hire a contractor to tear down your garage and they show up at your neighbor's house and tear down that garage, there are a lot of ways to draw these analogies. And as Your Honor pointed out, if they'd gone to the right house and they'd arrested the right person, that would all be legal and therefore the merits of the underlying torts would not be satisfied. Now on the related point, my friend is incorrect that the negligence tort merits have been addressed repeatedly at this point. But I think the most important thing for the sake of the procedural history is we're up on a motion for summary judgment that was filed by the government. And as to the negligence claims, their motion for summary judgment brief only asserted the discretionary function exception. It did not assert anything about the merits of the underlying negligence torts. But even if it had, we have again and again and again pointed out that going to the wrong house and raiding it is a negligent act. On the specifics of what you do with something like a state law immunity or privilege, Your Honor is correct. And I would also say that the concept of there being a private person acting under color of state law is a contradiction in terms. The FTCA at two separate places, 1346 and 2674, says that you have to look at the standard of a private person or a private individual under like circumstances. Bringing in immunities and defenses for government officials cannot possibly be squared with that language. But even if it could, in this case, the good faith exception that my friend asserts is one that only applies when someone is arrested under a warrant. There was no warrant here. And that's how they got out of liability for the false arrest claim is they said we arrested the wrong people. The warrant as to them was void. If that's true, they can't possibly assert a defense that would apply even if you get past the official aspect of it to a to a situation where they likewise had no warrant to go on. Similarly, with innocent trespasser, they leave out the language of the standard that says that it has to be non-negligent or unintentional and that there's an exception for dangerous activity, which, of course, a SWAT raid is on and on and on. And so I would say I would like to end by saying we should not ignore the elephant in the room here, which is also the fact that Congress amended the FTCA specifically to allow claims for wronghouse raids. And so, again, when I said what I said about this being a prototypical example, it actually is. We know that from the context. And so if Congress would go to all that trouble just to make sure there are claims here, courts should not be undoing that by taking small bites away through, you know, applications of the discretionary function, step one or step two, notwithstanding the confusion in the case law. So unless the court has other questions, which I'm happy to answer, we would ask that this court hold the discretionary function exception does not apply and that plaintiff's claims, all of them, are allowed to proceed to trial. Right. Stay there for a second because I have a question I'm going to ask Mr. Ross, too. There's been a lot of paper since the district court ruled. The Supreme Court has changed, abrogated some of our law. We have to review the district court's order, the initial briefs, the Supreme Court decision, the supplemental briefs on remand, whatever. Do you want a chance to rebrief everything from start to finish in light of the new landscape to eliminate the possibility that the three of us might miss something? Your Honor, I would be more than happy to provide a more fulsome briefing on this point if the court wants to. It's not on this point. The district court relied on a doctrine that is now gone, right? For some of the claims. Yes. Right? Yes. Okay. When you briefed, when you initially briefed the case, that law was still governing in this circuit. So you briefed the case in a certain way, right? That doctrine is now gone. So, I'm asking you whether you want the opportunity to brief everything again as if we were the initial panel and no briefs have been filed at all and the Supreme Court's decision had been issued in a different case and we now knew that our law on the supremacy clause was gone, for example. The answer, Your Honor, is yes. Or do you think we're okay with what we have? Well, I firstly say I would like the opportunity to rebrief it if the court is going to take up the merits of the negligence claims. And that's because, as I said, the government itself never even asserted on the basis of summary judgment these defenses or that somehow the negligence-based claims would fail on the merits. So if the court's going to take those up, then yes, I would like the opportunity to rebrief that. Well, no, but I'm, here's my confusion. As I understood the procedural history of the case, the prior panel asked the parties what they wanted to do after the Supreme Court's decision. Do you want to remand? Do you want to stay here? Do you want to file supplemental briefs? And as I understand what the parties told the prior panel, the parties didn't want to go back to the district court. They wanted everything or almost everything resolved here. I presume that that's still the case. Yes, Your Honor. Okay.  Yeah, and if I may, again, the reason why we, at least why plaintiffs said that is because the question of why the negligence claims failed in its entirety was the discretionary function exception. Now, the Supreme Court revived those claims, which I think is a strong indication that it was concerned with the analysis that had been done, but the merits of those claims were never even before the district court because the government did not raise them in its motion. And so what I'm saying is, if we're talking about looking at the merits of the negligence claims, that's something the government never even asked the district court to do as a basis for summary judgment. But those you don't want us to rule on if the government never moved for summary judgment on them. I think, well, this court would need to rule on the fact that the discretionary function exception doesn't apply, but it doesn't need to go further than that. No, I'm talking about the merits of those claims if you get past the discretionary function exception. Correct. I think the court does not need to rule on those. It can simply point out that the government never made that argument in its request for summary judgment below, so the district court never even passed on it. Now, if the court does want to rule on everything just so it's all in one place, then yes, I would say we would welcome the opportunity to rebrief this as if the entire thing is starting from the government's hypothetical motion for summary judgment that did, in fact, raise those aspects of the negligence claims. Okay. Thank you. Thank you. Mr. Ross, what do you think on this point? On whether additional briefing? A briefing as if the district court had just ruled, the Supreme Court came out with this decision but in a different case, and now the plaintiffs are going to file their initial brief with that case's background, and then you're going to respond and they're going to reply. We can do that, Your Honor. I do not think it's necessary. Again, the Supreme Court did not overrule Galbert, it did not overrule this court's prior discretionary function exception precedent. The district court determined that discretionary function exception applied to each of plaintiff's claims. We did the supplemental briefing that I think addresses the kind of new landscape in light of the Supreme Court's holding, so I don't believe it's necessary, but we would be happy to do it if the court would like. Okay. Stay tuned. If we want supplemental briefing, we'll let you know in the next week. Okay. Thank you both very much.